IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALYN FRANCIS WAMBEKE | Criminal Action No.<br><br>1:13-CR-439-SCJ-AJB |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

The United States of America, by Sally Quillian Yates, United States Attorney, and Brent Alan Gray, Assistant United States Attorney for the Northern District of Georgia, files this Response to Defendant's Supplemental Brief in Support of Motion to Suppress.

**1. Relevant Procedural Background**

On November 5, 2013, Wambeke was indicted in a three-count indictment which charged him with distribution, receipt and possession of child pornography. (Doc. 1). On August 12, 2014, after being represented by his first attorney from November 2013 until August 2014, Wambeke filed a *pro se* motion to substitute counsel. (Doc. 34). On August 22, 2014, the District Court appointed Wambeke's current attorney. On November 3, 2104, Wambeke filed a motion to suppress statements. (Doc. 45). On November 11, 2014, Wambeke filed a motion and brief to suppress evidence from the execution of the search warrant. (Doc. 47). At a pre-trial conference on November 14, 2014, Wambeke

withdrew his motion to suppress statements and his motion to suppress evidence from the search was taken under advisement. (Doc. 49). On December 3, 2014, Wambeke filed this instant supplemental brief in support of his motion to suppress evidence. (Doc. 52).

At the pre-trial conference, Wambeke argued that there was an insufficient nexus between the residence searched and the crimes under investigation and that the affiant made a number of knowing or recklessly false statements in the affidavit which, if excised, would defeat probable cause. (Doc. 47-4-18, 18-21). With guidance from this Court and following supplemental information from the government, Wambeke narrowed his argument to two issues. First, Wambeke argues that the affiant misled the issuing judge about the nature of a photograph used in Wambeke's Skype profile and, in connection, failed to provide the issuing judge with an adequate definition of child pornography. Second, Wambeke argues that the information in the affidavit about a secured wireless network associated with Wambeke's residence was misleading and not probative and therefore the affidavit did not establish a sufficient nexus to the residence.

### 2. Government's Position on Wambeke's Arguments

**A. The affiant did not intend to mislead the issuing judge with information about Wambeke's Skype profile photograph and it was not necessary for the affiant to provide a definition of child pornography in his affidavit. Regardless, Wambeke's argument fails under a *Franks* analysis.**

United States Department of Homeland Security (DHS), Homeland Security Investgation (HSI), Special Agent David Westall was the affiant for the search warrant. In an effort to explain the background of the investigation, and prior to the affidavit section entitled "Probable Cause to Search," Westall wrote in ¶ 6:

> During May and June 2013, the CS [cooperating source] identified individuals with whom he/she had communicated online, and in person, and had discussed the sexual exploitation of minors and/or traded child pornography. The CS identified the online Skype identity "Crew" as a person that had child pornography and is seeking to trade child pornography. The CS also noted "Crew" had a Skype profile picture that appeared to be child pornography. I have viewed "Crew"'s Skype profile picture and it depicts two, completely nude, young teen age boys lying face down in a forest setting.

Wambeke admits that the photograph as described by Agent Westall was his Skype profile photograph but nonetheless argues that the paragraph contains "both a material falsehood and omission."[1] And, even though Wambeke concedes that Agent Westall does not state in ¶ 6 that the photograph constituted child pornography, Wambeke takes issue with Agent Westall's failure to correct

---

[1] The subject photograph which clearly shows two nude males who appear to be teenagers is filed, under seal, as an attachment to this government's response.

the source's characterization of the photograph as child pornography. Without commenting on the source's characterization, Agent Westall accurately described the photograph for the issuing judge. Wambeke also takes issue with Agent Westall's other reference to the Skype profile photograph in ¶ 8:

> During a review of [another child pornography subject]'s computer I noticed a file folder named Crew. This file folder contained numerous items of child pornography, including the image that "Crew" uses as his online profile photograph.

Wambeke argues that this is "a falsehood" because the Skype photograph "was not child pornography." (Doc. 52-4). Wambeke does not argue that the other images contained in the same file folder were not child pornography. Instead, Wambeke maintains that the affidavit is defective because it does not include an adequate definition of child pornography. (*Id.* at 4-6).

Wambeke ignores the fact that in his affidavit Agent Westall summarized his considerable experience with child pornography investigations and twice referenced the definition of child pornography provided in the United States Code. In ¶ 1, Agent Westall stated that he received training in the area of child pornography and child exploitation, and had the opportunity to observe and review numerous examples of child pornography as defined in 18 U.S.C. § 2256.[2]

---

[2] 18 U.S.C. § 2256(8) provides: "'child pornography' means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where -- (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer

4

In ¶ 3, Agent Westall wrote that "[b]ased upon the following information, there is probable cause to believe that currently located within the subject premises and in the above-described vehicle is evidence, fruits and instrumentalities of the receipt, distribution, and/or possession of visual depictions, and other related materials, involving minors engaging in sexually explicit conduct (child pornography), as that term is defined in Title 18, United States Code, Section 2256."  By repeatedly referring to the definition of child pornography, Agent Westall made it clear to the issuing judge that he was familiar with the definition of child pornography and had concluded that the images he viewed or otherwise considered during the course of his investigation fit within that definition.  Nonetheless, Wambeke claims the affidavit lacks particularity because "the term is never defined by [cooperating witnesses] or the agent."  (Doc. 52-5).

Wambeke's argument fails because "[t]he Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty." *L. A. County v. Rettele*, 550 U.S. 609, 615 (2007).  The task of a magistrate judge, when issuing a warrant, "'is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit. . . , there is a fair probability that contraband or evidence of a crime will be found  in a particular place.'"  *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (quoting *Illinois*

---

image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct."

*v. Gates*, 462 U.S. 213, 238 (1983).  The *Miller* court explained the role of a court reviewing a search warrant:

> Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner, rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrate [judges] in their probable cause determinations.

*Miller*, 24 F.3d at 1361 (citing *Gates*, 462 U.S. at 236-37).

The "critical information [that] should be included in a search warrant affidavit to establish a finding of probable cause" includes "facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched."  *United States v. Martin*, 297 F.3d 1308 (11th Cir.)(citation omitted), *cert. denied* 537 U.S. 1046 (2002).  "Specifically, the affidavit should establish a connection between the defendant and the [place] to be searched and a link between the [place to be searched] and any criminal activity."  *Id*.

Wambeke's argument that the false statement and omission associated with the Skype profile photograph defeats probable cause also fails under a *Franks* analysis.  In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978), the Supreme Court developed a two-step process for determining whether an officer has violated an individual's Fourth Amendment rights by making misrepresentations or omissions in an affidavit in support of a warrant.  First, it must be determined whether the alleged misrepresentations or omissions were

intentionally or recklessly made.  The *Franks* rule *only* applies to "cases of perjurious or recklessly false statements or omissions made by a police officer in support of a warrant; the rule does not apply to *negligent* misrepresentations or omissions." *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994) (emphasis in original).  "A law enforcement officer recklessly disregards the truth when he 'should have recognized the error [in the warrant application]," or at least harbored serious doubts' as to the facts contained therein." *Daniels v. Bango*, 487 Fed. App'x 532, 537 (11th Cir. 2012).  Second, any intentionally or recklessly false statements must be excised from the affidavit, and any intentional or reckless material that would counter probable cause must be added to the affidavit, and the affidavit must then be evaluated in the revised form to determine whether there is still probable cause for the issuance of the search warrant. *See United States v. Kirk,* 781 F.2d 1498, 1502 (11th Cir. 1986) and *United States v. Harris*, 464 F.3d 733, 739 (7th Cir. 2006).

Here, in ¶ 6, Agent Westall accurately relayed information that a cooperating source told him that Wambeke's Skype profile photograph "appeared to be child pornography."  Agent Westall immediately followed that sentence with an accurate description of the photograph.  It is unlikely that Agent Westall's description misled the issuing judge because the judge was, no doubt, aware of the federal definition of child pornography.  However, even if this Court determined that Agent Westall intentionally or recklessly implied that Wambeke's Skype profile photograph was child pornography, removing the characterization of the profile photograph altogether or adding a statement that

the profile photograph was not child pornography because it did not show the children involved in sexually explicit conduct would not have impacted a finding of probable cause to issue the warrant.  Under the *Franks* analysis, if there is still probable cause in the revised affidavit evaluated as a whole, then there is no Fourth Amendment violation, regardless of how intentional or reckless the agent was in including false information or omitting information.  *Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997).

## B. The affidavit established a sufficient connection between Wambeke's residence and the alleged criminal activity.  And, again, Wambeke's argument fails under a *Franks* analysis.

Agent Westall's affidavit provided ample information for the issuing judge to find that there was a sufficient connection between Wambeke's residence and the alleged criminal activity associated with child pornography.

In ¶ 7,  Agent Westall stated that HSI agents executed a search warrant at the home of Kevin Hickey.  Hickey told agents that he watched and traded child pornography on a number of occasions with a collector, Alan Franco, who was also known as "Crew."  According to Hickey, on at least three occasions, Franco, brought child pornography to his home using a laptop computer and an external hard drive.  Hickey was able to provide Franco's telephone number to agents.

In ¶ 8, Agent Westall stated that Hickey's computer contained a file folder named "Crew."  That file folder contained child pornography.

In ¶ 9, Agent Westall explained that public records showed that Franco's telephone number provided by Hickey belonged to Wambeke.  Public records

also showed that Wambeke owned a 2005 Toyota Scion, tag number BQK7737, and that Wambeke resided at 222 Dennis Drive in Alpharetta, Georgia.

In ¶ 11, Agent Westall stated that HSI agents executed a search warrant at the residence of Nathan Trent and Alan Watts.  Trent told agents that he traded child pornography with Wambeke through Skype and during an in-person meeting.  According to Trent, Wambeke had a massive collection of child pornography and brought child pornography to his home using a laptop computer and an external hard drive.  Trent said Wambeke was known by his on-line moniker, "Crew."  Trent confirmed that Wambeke used the same telephone number provided to agents by Hickey.

In ¶ 12, Agent Westall stated that Watts also told agents that Wambeke brought child pornography to his home using a laptop computer and an external hard drive.  Watts said Wambeke was known by his on-line moniker, "Crew." Watts confirmed that Wambeke used the same telephone number provided by Hickey and Trent.

In ¶ 13, Agent Westall explained that agents conducted surveillance at 222 Dennis Drive and confirmed that Wambeke's vehicle was parked outside the residence and public records show that Wambeke and his mother reside there.

In ¶ 16, Agent Westall stated that based on his investigation, training and experience, child pornography collectors almost always maintain their collections in the privacy and security of their homes or other locations for years.

Despite this clear basis to believe investigators would probably find child pornography inside 222 Dennis Drive, Wambeke contests the issuing judge's

finding of a nexus to his residence.  Primarily, Wambeke argues that Agent Westall's statement in ¶ 13 -- that a secured wireless internet connection was associated with the residence -- is misleading and establishes nothing.  Wambeke does not address the allegations of Hickey, Trent and Watts or dispute that he resided at 222 Dennis Drive at the time of the search.

In ¶ 13, Agent Westall intended to show that no unsecured wireless connection was associated with Wambeke's residence.[3]  Although inartful, the statement was not offered in an attempt to show that Wambeke was downloading child pornography from the internet at his residence.  The investigation that preceded the search warrant primarily involved the physical, in-person distribution and sharing of child pornography.  Although this investigation revealed evidence about Wambeke's use of a Skype account, Agent Westall's knowledge about Wambeke's possession and distribution of child

---

[3] At the direction of this Court, the government emailed the following information to Wambeke's counsel following the pretrial conference:  "With regard to paragraph 13 - Agent Michael Ashley and Agent David Westall conducted multiple surveillances at the Wambeke residence.  While Agent Ashley was parked immediately adjacent to the residence, Agent Ashley observed only secured wireless connections.  The point of the statement - "During multiple surveillances HSI agents were able to determine there was a secured wireless internet connection associated with the residence" - is to show that there were no UNSECURED wireless connections associated with the Wambeke residence.  This information was included in the affidavit to show that no one else had access to an unsecured wireless connection at the Wambeke residence."

pornography was primarily based on interviews of men with whom Wambeke shared his child pornography during personal visits.

In addition to establishing probable cause that Wambeke possessed, received and distributed child pornography, the affidavit also presented probable cause to believe that evidence of a crime would be found inside 222 Dennis Drive. The issuing judge made a practical, common sense decision that, given all of the circumstances set forth in the affidavit before him, there was a fair probability that contraband or evidence of a crime tied to Wambeke would probably be found inside the residence. The duty of this Court is simply to insure that the issuing judge had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. 213 (1983).

This is not a case where law enforcement was aware of a defendant sending or receiving child pornography only via the internet, or of a defendant subscribing to a child pornography website. Before applying for the search warrant, Agent Westall was aware of multiple instances of Wambeke physically bringing child pornography to others. The affidavit contained specific information regarding Wambeke's connection to investigations in this district involving at least three other child pornography offenders. Agent Westall explained to the issuing judge that, in each instance, the cooperating offender was familiar with Wambeke and had personally witnessed Wambeke's possession and distribution of child pornography.

Agent Westall noted in his affidavit that Wambeke's vehicle was registered to him at the 222 Dennis Drive address and that his vehicle was observed parked

outside the residence. Agent Westall also explained that public records showed that Wambeke lived at the residence with his mother. Agent Westall also set forth certain information he had obtained by virtue of his training and experience, and from working with other trained law enforcement personnel regarding some of the characteristics of child pornography collectors. Namely, he noted that collectors often meet with others to share their materials, that they rarely dispose of their sexually explicit materials and that they almost always maintain their collections in the privacy and security of their homes or other secure locations for years.

Based on the totality of the circumstances presented in the affidavit, it was reasonable for the issuing judge to find that there existed a fair probability that contraband or evidence of a crime would be found inside 222 Dennis Drive. This is true even if this Court determines that the statement in ¶ 13 about the secured wireless connection associated with Wambeke's residence was made intentionally or recklessly. Under a *Franks* analysis, this information would be excised from the affidavit and then the affidavit would be evaluated in its revised form. Since the probable cause for the warrant is established with statements from three men who claim that Wambeke brought child pornography stored on his computer devices to their homes, whether or not Wambeke had access to the internet at his residence is irrelevant.

### 3. The Leon "Good Faith" exception, if necessary, defeats Wambeke's request to suppress evidence in this case.

This warrant was executed by agents having an objective, good faith reliance on the validity of the warrant.

The case of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984) stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. "The purpose of the exclusionary rule is to deter unlawful police misconduct; therefore, when officers engage in 'objectively reasonable law enforcement activity' and have acted in good faith when obtaining a search warrant from a judge or magistrate, the *Leon* good faith exception applies." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002); *see also United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003).

Under *Leon*, good faith is an objective standard judged by what a reasonable law enforcement officer would perceive under the circumstances, not a standard judged by a legally trained magistrate or judge. *United States v. Taxacher*, 902 F.2d 867, 871-72 (11th Cir. 1990). As the Supreme Court ruled in *Massachusetts v. Sheppard*, 468 U.S. 981, 989-90 (1984), "[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."

The Supreme Court reviewed its exclusionary rule cases in *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695 (2009). The Court noted that the "principal cost

of applying the rule is, of course, letting guilty and possibly dangerous defendants go free – something that 'offends the basic concepts of the criminal justice system.'" *Herring* at 141, 129 S.Ct. 701, *quoting Leon*, 468 U.S. at 908. The Court reiterated that when police execute a warrant later invalidated for lack of probable cause, the exclusionary rule should not be applied if the reliance on the warrant by police was objectively reasonable. *Id*. According to *Herring*, a reviewing court should suppress evidence only if it finds the investigator "had knowledge, or may properly by charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 143, 129 S.Ct. 701-02, *citing United States v. Krull*, 480 U.S. 340, 348-49 (1987). The Court also reiterated that its original exclusionary rule cases "featured intentional conduct that was patently unconstitutional." *Id*. at 143, 129 S.Ct. 702. The Court also addressed when a *Franks* violation should trigger the exclusion of evidence. They found that police negligence in obtaining a warrant does not constitute a Fourth Amendment violation, much less require the exclusion of evidence. *Id.* at 145, 129 S.Ct. 703. Finally, the Court said, to trigger the exclusionary rule, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144, 129 S.Ct. 702.

 In Wambeke's case, there is simply no basis to conclude that the agents acted unreasonably in relying on the warrant. As set forth above, the affidavit outlined numerous connections to Wambeke, his home and the possession, receipt and distribution of child pornography. No issue cited by Wambeke can be

considered conduct that rises to the level necessary to trigger the extraordinary remedy of the exclusion of evidence.

### 4. Conclusion

There was sufficient probable cause to support the issuance of the search warrant in this case. The United States therefore asks this court to deny Wambeke's Motion to Suppress Evidence.

                Respectfully submitted,

                SALLY QUILLIAN YATES
                  *United States Attorney*

              /s/BRENT ALAN GRAY
                  *Assistant United States Attorney*
                  Georgia Bar No. 155089
                  Brent.Gray@usdoj.gov

                  75 Spring Street, S.W.
                  Atlanta, GA 30303
                  (404) 581-6000

## Certificate of Service

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

                             L. Burton Finlayson

December 17, 2014

                                      /s/ BRENT ALAN GRAY

                                      BRENT ALAN GRAY

                                      *Assistant United States Attorney*