# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL ACTION FILE NO.** |
| | **:** | **1:13-CR-439-SCJ-AJB** |
| **ALYN FRANCIS WAMBEKE,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### UNITED STATES MAGISTRATE JUDGE'S
### FINAL REPORT AND RECOMMENDATION

Presently before the Court is a motion filed by Defendant Allyn Francis Wambeke ("Wambeke" or "Defendant") by which he seeks to suppress the fruits of a search warrant for his residence and automobile, which was executed on July 30, 2013. [Doc. 47, supplemented by Doc. 52]. The government filed a response to the motion, [Doc. 55], and Wambeke replied, [Doc. 60]. Wambeke then filed a supplemental brief, [Doc. 63], and the Court heard oral arguments of counsel, [Doc. 64]. With briefing and arguments concluded, the Court entertains the motion.

For the following reasons, the undersigned **RECOMMENDS** that the motion be **DENIED**. Specifically, the undersigned **RECOMMENDS** that the District Court conclude that the search warrant was not supported by probable cause, but that

suppression of the fruits of the warrant is not appropriate after applying the good-faith exception to the exclusionary rule pursuant to *Leon v. United States*, 468 U.S. 897 (1984).

## I.   Introduction

By way of an indictment filed November 13, 2013, Wambeke was charged in this District with knowingly distributing one or more visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(2) and (b), (Count One); knowingly receiving one or more visual depictions of minors engaging in sexually explicit conduct, in violation of  18 U.S.C. §§ 2252(a)(2) and (b), (Count Two); and knowingly possessing a computer containing one or more visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) (Count Three).  There also is a forfeiture count.  [Doc. 1].[1]

--------

[1]   The undersigned previously certified this case ready for trial.  [Doc. 19]. On May 23, 2014, the District Court decertified the case, granted Wambeke additional time to file pretrial motions, and referred it back to the undersigned.  [Doc. 24].  When no motions to suppress were filed, the case again was certified ready for trial on July 28, 2014.  [Doc. 30].  After the case was set for trial by the District Court, the District Court referred the matter back to the undersigned for appointment of new counsel, [Dkt. Entry 08/20/2014], and was subsequently decertified again.  [Doc. 41]. Replacement counsel filed the pending motion.

2

The charges stem from the execution of a federal search warrant issued July 26, 2013.  [Doc. 47-1].  On that date, David Westall, a Special Agent with Homeland Security Investigations, Immigration and Customs Enforcement (HSI/ICE),[2] submitted an affidavit to a United States Magistrate Judge in this District, in support of an application for a search warrant to search 222 Dennis Drive in Alpharetta, Georgia (hereinafter "the residence" or "subject premises") and a 2005 Toyota Scion, Georgia Tag No. BQK7737 (hereinafter "the Scion" or "the vehicle") for child pornography.  [Doc. 47-2].  In the affidavit, Westall stated that based upon the information in his affidavit, "there is probable cause to believe that currently located within the subject premises and in the . . . vehicle [ ] evidence, fruits and instrumentalities of the receipt, distribution, and/or possession of visual depictions, and other related materials, involving minors engaging in sexually explicit conduct (child pornography), as that term is defined in Title 18, United States Code, Section 2256."  [Doc. 47-2 at 3-4].

---

[2]   At the time of the application for the warrant, Westall had been a federal law-enforcement agent for twelve years, four years with HSI and the balance with the Food and Drug Administration and the Office of the Inspector General for Health and Human Services.  [Doc. 47-2 at 2].  His law-enforcement training included investigation of child-pornography and child-exploitation crimes, and he had been the lead case agent on, and investigated numerous instances of, those types of crimes.  [*Id.*].

3

Westall continued that in 2013, HSI Atlanta executed a search warrant in this district for child pornography, and the resident of the location searched (referred to as "CS") admitted to trading child pornography through various means, including email, and after the search warrant was executed, the CS began cooperating with law enforcement. [*Id.* at 4]. The affidavit recounted that in May and June 2013, the CS identified others with whom he communicated both online and in person and either discussed child exploitation or traded child pornography, and stated that a person identified by Skype name as "Crew" possessed and had sought to trade child pornography. He also alleged that Crew had a Skype profile page that appeared to be child pornography, which Westall viewed and described as two completely nude young teenage boys lying face down in a forest setting. [*Id.* at 4-5].

Westall then related in his affidavit that in May 2013, HSI agents searched Kevin Hickey's home, and Hickey stated that he traded and watched child pornography with "Alan Franco" on numerous occasions. He stated Franco's Skype name was "Crew," and provided Crew's phone number. Hickey also stated that Franco came to his apartment by automobile at least three times with child-pornography videos stored on a laptop and an external hard drive. Hickey reported that Franco had given him thousands of child pornography images and videos. Hickey was charged by indictment

4

in this district with distribution and possession of child pornography. Hickey's computer contained a file named Crew which contained numerous child pornography images and Crew's online profile picture. [*Id.* at 5].

The phone number for Franco/Crew provided by Hickey came back to Wambeke, and a records check revealed that Wambeke owned the Scion and lived at the Dennis Drive residence. [*Id.* at 6].

Westall then related that in 2002, ICE agents in Jacksonville, Florida, discovered an email address "that resolved to" Wambeke, and that the email address had accessed an international website that hosted child pornography. Wambeke refused to consent to search his computers unless he was given immunity. [*Id.*].

The affidavit continued that in July 2013, the residence of Nathan Trent and Alan Watts was searched, and when interviewed, Trent stated that he watched and traded child pornography with Wambeke via Skype and in person. Trent claimed that Wambeke on at least one occasion brought him child-pornography videos on a laptop and external drive. Trent also stated that Wambeke had "a massive collection" of child pornography and had given Trent hundreds of images and videos. Trent also related that Wambeke brought the child pornography using a car. [*Id.*]. Trent also told law enforcement that Wambeke was known by the Skype name "Crew" and provided

5

Wambeke's telephone number (the same as related by Hickey). He stated he last traded child pornography with Crew via Skype on July 15, 2013, and forensic examination of Trent's computer confirmed that Skype communication. [*Id.* at 7].

Watts also stated that he watched child pornography with Wambeke in person and that Wambeke came to his house at least one time in a car and brought the child pornography on a laptop and external drive. He also knew Wambeke's Skype name as "Crew" and his telephone number. [*Id.*].

Agents conducted surveillance of Wambeke's residence the week of July 22, 2013, and saw the Scion, determined there was a secured wireless Internet connection associated with the residence, and were able to determine that Crew was actively engaged in online communications during the surveillance. Open-source databases revealed that Dorris Wambeke was the residence's primary occupant and that her son Alyn resided there as well. [*Id.* at 7-8].

The affidavit also related the following description of characteristics of child pornography collectors and distributors:

> Based on my investigation, training and experience, and based on information obtained from other trained law enforcement officers, I have learned that child pornography collectors/distributors:

AO 72A
(Rev.8/8
2)

a.      Receive sexual gratification, stimulation and satisfaction from actual physical contact with children and/or from fantasies that they may have while viewing children engaged in sexual activity or in sexually suggestive poses (in person or in photographs or other visual media), or from literature describing such activity;

b.      Collect sexually explicit or suggestive materials (hard-core and soft-core pornography in a variety of media, such as photographs, magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media that they use for their own sexual· arousal and gratification. Further, they may use this type of sexually explicit material to lower the inhibitions of children whom they are attempting to seduce, to arouse the selected child partner, and to demonstrate the desired sexual acts;

c.      Almost always possess and maintain their collection (pictures, films, videotapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, child erotica, etc.) in a safe, secure environment, such as his/her home computer and surrounding area, because this material is illegal, can be difficult to obtain, and can be difficult to replace. Child pornography distributors/collectors typically retain pictures, films, photographs, mailing lists, child erotica, and videotapes for extended periods of time, if not indefinitely, and these items are kept close by, usually at their residence, to enable the collector to view his/her collection, which is highly valued;

d.      Often correspond and/or meet others to share information and materials; rarely destroy correspondence from other pornography distributors/collectors; conceal such correspondence as they do their sexually explicit materials; and often maintain lists of names, addresses, including e-mail addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography; and

AO 72A
(Rev.8/8
2)

e.      Generally prefer not to be without their child pornography and/or· child erotica for any prolonged period of time.  This behavior has been documented by law enforcement officials involved in the investigation of child pornography throughout the world.

f.      The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials.  I know this information from my own experience and from talking with other agents with experience in this field.  This kind of collection behavior has been noted by law enforcement agencies throughout the world.  They almost always maintain their collections in the privacy and security of their homes or other secure location for years.

[*Id.* at 12-14].

## II.      Contentions of the Parties

Wambeke initially argues that the affidavit did not establish a nexus between the residence or his vehicle and the suspected crimes, but only that the person suspected of committing the crimes lived at the residence and drove the Scion.  [Doc. 47 at 4-5, 17-18].  He contends that the information related by CS, Hickey, Trent, and Walls describe crimes occurring at their own residences, but this information does not demonstrate any connection to Wambeke's residence.  [*Id.* at 5-8, 9-12].  He further submits that his arrival at these informants' homes in a car and the allegation that he brought a computer/hard drive is completely generic information which does not contribute to

8

probable cause.  [*Id.* at 10].  He likewise claims that where he lived and what vehicle he drove is generic information easily obtained from open sources and, therefore, does not contribute to probable cause.  [*Id.*].  He also argues that the information about the Jacksonville email address was stale and also does not establish a probability that he was involved with child pornography.  [*Id.* at 9].

As for the surveillance at his home, Wambeke contends that the fact that his vehicle was parked there does not indicate that he was at home, and the vehicle's presence there just as likely establishes that he was away on business or vacation.  [*Id.* at 11].  Moreover, since he claims most homes in America have an Internet connection, the fact that his mother's residence had one is of no moment.  [*Id.* at 12].

He also alleges that the "boilerplate language" about characteristics of persons possessing child pornography has no case-specific information about him and generally lacks an allegation of fact relevant to this case and that therefore it cannot act as the sole nexus between him and the residence.  [*Id.* at 13].  He also alleges that the fact that it was his mother's home made it less likely that he would store child-pornography there.  [*Id.* at 14].  He also contends that Westall's statement in the affidavit that child pornography possessors maintain their collections in their homes "or other secure

9

locations," [*id.* at 16 (quoting Doc. 47-1, ¶ 16)], means that there were unlimited numbers of other places besides the home where the materials could be stored. [*Id.*].

Wambeke also contends he is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), because the affidavit contained the following material falsehoods or omissions: (1) no charges were brought against him as a result of the 2003 Jacksonville investigation, and that investigation revealed that other persons had accessed his account, [Doc. 47 at 19]; (2) the affidavit's use of the terms "associated with" or "resolved to" usually means the affiant did not have evidence to support the factual assertion or assumption, particularly as it related to the Jacksonville allegation and the secured wireless Internet connection at his mother's house; and (3) the profile photograph on Crew's Skype page was not child pornography. [*Id.*].

In a supplemental pleading, Wambeke adds that the Crew profile photograph was not preserved by the government but in any event, it was not child pornography, and additionally proffers that the image originated on a commercial website that posts photographs of adult young gay men. [Doc. 52 at 2-4 & n.1]. Wambeke also argues that the affidavit failed to define "child pornography," and given that the Skype screen avatar was not child pornography, there is no indication in the affidavit that the images involved were child pornography. [*Id.* at 4-6].

10

Finally, Wambeke points out that the government advised that Westall's reference to a secured wireless network associated with his mother's house actually meant that there were no unsecured networks in the vicinity. [*Id.* at 7]. He reiterates that the unsupported word of an HSI agent that persons hide child pornography in their homes is insufficient to establish the required nexus in this case. [*Id.* at 7-8].

The government responds that as to Crew's Skype profile photograph, the affiant did not allege that it was child pornography and instead accurately described the image it depicted. [Doc. 55 at 3-4, 7]. As for Wambeke's argument that the affidavit did not define or describe child pornography, the government argues that Wambeke's argument ignores Westall's experience in investigating child-pornography crimes and observing child pornography and the reference in the affidavit to the definition of child pornography in the U.S. Code. [*Id.* at 4-5 & n.2]. As for the nexus to Wambeke's residence and vehicle, the government contends the affidavit adequately established a connection. It argues that this is not a case where the suspect only sent child pornography over the Internet, but that it also included Wambeke's physical delivery of child pornography to other child-pornographer offenders by driving a vehicle to their residences. The affidavit detailed where Wambeke lived and the vehicle he owned, and surveillance established that there was a secured wireless Internet connection at the

11

residence, making it unlikely that another person had access to it.  It argues that the totality of the circumstances makes it likely that Wambeke stored child pornography at the residence.  [*Id.* at 11-12].  The government argues that even if the warrant did not establish probable cause, suppression is not necessary pursuant to the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984).  [Doc. 55 at 13-15].

In reply, Wambeke argues that the affiant misled the issuing magistrate judge by representing that the Skype avatar was child pornography.  [Doc. 60 at 1-2].  He also argues for the first time in his reply brief that the failure to define or describe child pornography resulted in the warrant being a prohibited general warrant that allowed the agents to seize almost anything they perceived to be child pornography.  [*Id.* at 2-7]. He further argues that the intent on the statement about the secured wireless Internet connection was to mislead the issuing judge into believing that Wambeke was downloading child pornography at the time the agents were surveilling the target residence.  [*Id.* at 7].  As to the government's nexus argument, Wambeke essentially reiterates his earlier arguments.  [*Id.* at 8-10].  He finally argues that good faith does not prevent suppression because the exception does not apply where the affiant misled the issuing judge.  [*Id.* at 10-12].

12

In a second supplemental filing, Wambeke reiterates that he is contending that the failure to define or describe "child pornography" rendered the affidavit insufficient to constitute probable cause. [Doc. 63 at 1-2]. He argues that the images the affiant described as child pornography were not described, and that such generic descriptions do not satisfy probable cause test, citing *United States v. Pavulak*, 700 F.3d 651-61 (3rd Cir. 2012); *United States v. Battershell*, 457 F.3d 1048, 1051 (9th Cir. 2006); *United States v. Burnette*, 256 F.3d 14 (1st Cir. 2001); *United States v. Genin*, 594 F. Supp. 2d 412, 423-24 (S.D.N.Y. 2009). [Doc. 63 at 2-3]. He also contends that *Leon* did not save the warrant because it was so lacking in probable cause. [*Id.* at 3].

At oral argument, Wambeke argues that the failure of the affidavit to describe the purported child pornography is critical, particularly since the Skype photo, as described, was clearly not child pornography. He argues that the fact that the affiant described the Skype photo as child pornography demonstrates that his conclusory statements that Wambeke distributed child pornography to others is unworthy of trust. In addition, although he conceded that some cases rely upon the experience of the investigator to supply the missing details of whether images constitute child pornography, here the agent just was not that experienced, *see* note 2 *supra*, and his inaccurate portrayal of the Skype photo undermines his experience in detecting and

AO 72A
(Rev.8/8
2)

describing child pornography.  He also states in response to a question from the Court that the fact that one of the informants was indicted for child pornography requires too many inferences to use that fact to presume that the issuing judge could have inferred that the images distributed by Wambeke were in fact child pornography.  He also argues that there was no nexus between his residence and the activity described in the affidavit.  Finally, he contends that *Leon* does not save the warrant, because the affiant misled the issuing judge and the bare affidavit means the issuing judge abandoned his neutral and detached role.

The government argues at oral argument that the warrant was supported by probable cause because the issuing judge was entitled to rely upon the experience of the affiant and the totality of the circumstances.  It notes that in *Pavulak*, the officer was not trained, and unlike the present case, the warrant in *Pavulak* contained very few details.

**III.   Applicable Law**

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

14

AO 72A
(Rev.8/8
2)

U.S. Const. amend. IV.

Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location. *See United States v. Noriega*, 676 F.3d 1252, 1261 (11th Cir. 2012); *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991). "[P]robable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts[.]" *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). "[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Gates*, 462 U.S. at 241 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). The task of the issuing magistrate judge in determining whether to issue a warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*,

15

462 U.S. at 232; *United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000); *see also United States v. Somers*, 591 Fed. Appx. 753, 756 (11th Cir. Nov. 14, 2014).

Thus, the determination of probable cause based on an affidavit "does not lend itself to a prescribed set of rules," but instead uses a "flexible, common-sense standard." *Gates*, 462 U.S. at 240; *see also United States v. McCraven*, 401 F.3d 693 (6th Cir. 2005) (noting that "while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form"). The "probable cause" standard requires the government to produce much less evidence than it must present to sustain its burden of proof at trial. *United States v. Joseph*, 709 F.3d 1082, 1100 (11th Cir. 2013) (citing *United States v. Middleton*, 599 F.2d 1349, 1356 (5th Cir. 1979)). An affiant is allowed to summarize objective evidence from an investigation, *Jiminez*, 224 F.3d at 1249 (finding that "objective presentation of the information gained by the investigating officers" was not conclusory); however, conclusory statements in a search-warrant affidavit, without sufficient factual support, will not support a probable-cause finding. *Gates*, 462 U.S. at 239 ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the

16

magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued. "). "[I]ssuing judges should not substitute the police officer's assessment of the facts for the judge's own independent analysis of the situation . . . and [should] make his [or her] own independent assessment as to whether the warrant and its underlying affidavit contain a sufficient amount of information to support a finding of probable cause." *Martin*, 297 F.3d at 1317.  At the same time, "opinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation for issuing a search warrant." *United States v. Robinson*, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995) (citations omitted) (punctuation and quotation marks altered).

A warrant affidavit may be based on hearsay information, so long as the issuing judge was informed of (1) the underlying circumstances that the informant relied on to conclude that some criminal activity was taking, or had taken, place, and (2) some facts that established the probable credibility of the informant or the reliability of his information. *United States v. Hill*, 338 Fed. Appx. 855, 857-58 (11th Cir. July 23, 2009) (citing *United States v. Martin*, 615 F.2d 318, 323 (5th Cir. 1980)[3]); *see also McCray*

---

[3]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*v. State of Ill.*, 386 U.S. 300, 311 (1967); *United States v. Reed*, 700 F.2d 638, 641-42 (11th Cir. 1983) ("It has long been held that statements by law enforcement officials based . . . upon the observation of fellow officials participating in the same investigation are entitled to a presumption of reliability.").  The Eleventh Circuit has found probable cause existed for a warrant's issuance where the confidential informant had provided information that had proven to be truthful and reliable in the past and where the level of detail showed that the informant was unlikely to lie because the lies would be discovered in short order, *Brundidge*, 170 F.3d at 1353-54; where police were able to independently confirm some of the facts that the informant provided, *Martin*, 297 F.3d at 1315; *United States v. Talley*, 108 F.3d 277, 281 (11th Cir. 1997); and where the confidential informant made a statement against his or her penal interest to the officer, *Gates*, 462 U.S. at 268 n.20 (citation omitted);  *United States v. Farese*, 612 F.2d 1376, 1378 (5th Cir. 1980).

To make a showing of probable cause for a search warrant for a residence, the affidavit must demonstrate a nexus between the premises and both the alleged criminal activity and the defendant; it is not a necessity that the affidavit show that illegal activity took place at the residence.  *United States v. Piloto*, 562 Fed. Appx. 907, 913 (11th Cir. Apr. 10, 2014) (citing *Kapordelis*, 569 F.3d at 1310); *see also United States*

18

*v. Bradley*, 644 F.3d 1213, 1263 (11ᵗʰ Cir. 2011); *United States v. Martin*, 297 F.3d 1308, 1314 (11ᵗʰ Cir. 2002) (holding that the supporting affidavit "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity"). Cases establish, however, that probable cause to search a home exists if the affidavit contains evidence that the defendant possesses contraband that would typically be kept in the home. *United States v. Anton*, 546 F.3d 1355, 1358 (11ᵗʰ Cir. 2008) (noting that, according to affidavit, federal agents had observed defendant with firearms at gun shows, and affidavit further stated that, based upon federal agent's experience, convicted felons and firearms dealers possessing contraband typically store these items on their property); *see also United States v. Jenkins*, 901 F.2d 1075, 1081 (11ᵗʰ Cir. 1990) (noting that affidavit stated that FBI agent, who had spent ten years investigating bank robbery and burglary matters, advised that defendant's residence was most likely hiding place of evidence of the theft); *United States v. Lockett*, 674 F.2d 843, 846 (11ᵗʰ Cir. 1982) ("[T]he nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation.").

The task of a reviewing court in examining a challenge to a search warrant is different from the task of the issuing judge. In analyzing whether a search warrant is

19

supported by probable cause, a reviewing court does not conduct a *de novo* determination of probable cause, but only looks at whether there is substantial evidence in the record supporting the judge's decision to issue the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *United States v. Miller*, 24 F.3d 1357, 1363 (11th Cir. 1994) ("[R]eviewing courts lend substantial deference to an issuing magistrate's probable cause determinations."). When deciding whether a search warrant was supported by probable cause, the reviewing court must consider only that information brought to the attention of the issuing judge. *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982); *see also United States v. Schulz*, 486 Fed. Appx. 838, 841 (11th Cir. Aug. 14, 2012). When affidavits are attached to a warrant, courts consider the affiant's statements as well as the search warrant. *See United States v. Martinelli*, 454 F.3d 1300, 1308 (11th Cir. 2006). In reviewing the probable-cause determination, supporting affidavits should not be interpreted in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates judges in their probable-cause determinations. *See Gates*, 462 U.S. at 236-37 (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *Miller*, 24 F.3d at 1361. When it is difficult to determine

20

whether a search-warrant affidavit supports probable cause, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Upton*, 466 U.S. at 734 (quoting *Ventresca*, 380 U.S. at 109).

Search warrants, once issued, are presumed to be validly issued. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The burden of establishing that the warrant in this case was defective or executed improperly is upon the defendant. *Id.*; *United States v. Van Horn*, 789 F.2d 1492, 1500 (11th Cir. 1986); *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. Unit B 1981)[4]; *United States v. Osborne*, 630 F.2d 374, 377 (5th Cir. 1980). When challenging the integrity of a warrant under the Fourth Amendment, a defendant must make a substantial showing of a "deliberate falsehood or reckless disregard for the truth" in the affidavit supporting the issuance of the warrant. *Green v. Nelson*, 595 F.3d 1245, 1251-52 (11th Cir. 2010) (quoting *Franks*, 438 U.S. at 171). If that standard is met, the affidavit should be examined with the incorrect assertions set aside to determine whether the remaining information is sufficient to establish probable cause. *Franks*, 438 U.S. at 171-72. " '[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side,

---

[4]     The Eleventh Circuit has adopted as binding all decisions issued by a Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

AO 72A
(Rev.8/8
2)

there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.' " *Kapordelis*, 569 F.3d at 1309 (citations omitted).

Finally, the Supreme Court has established a "good faith" exception to the exclusionary rule to prevent suppression of the items found pursuant to a search warrant.  Under *United States v. Leon*, 468 U.S. 897, 913 (1984), the "good faith" exception to the rule requiring the suppression of evidence for violations of the Fourth Amendment keeps evidence from being suppressed when law-enforcement officers obtain evidence through objective good-faith reliance on a facially valid warrant that is later found to lack probable cause.  *See United States v. Gonzalez*,  969 F.2d 999, 1004 n.4 (11th Cir. 1992).  Nevertheless, "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued."  *Leon*, 468 U.S. at 922-23.  *Leon*'s good faith exception does not apply to the following situations: (1) where the magistrate judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate judge wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the

AO 72A
(Rev.8/8
2)

particular case, a warrant is so facially deficient–*i.e.,* in failing to particularize the place to be searched or the things to be seized–that the executing officers cannot reasonably presume it to be valid.  *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003); *Martin*, 297 F.3d at 1313.   When considering the applicability of the good-faith exception, the issue is not the magistrate judge's probable-cause determination, but rather whether the officers executing the warrant relied on that determination in good faith.  *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998).  The officers' actions must be considered under the totality of the circumstances when determining whether the officers' reliance on the search warrant was objectively reasonable. *Martin*, 297 F.3d at 1318.

As for *Leon*'s second exception, "courts must . . . insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police" in determining whether a warrant contains sufficient probable cause.  *Leon*, 468 U.S. at 914.  As the Eleventh Circuit has observed, the Supreme Court has not been clear as to what sort of judicial behavior constitutes abandonment, other than where the issuing judge accompanied the officers on the warrant's execution (*Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)), while other courts have found abandonment where the judge issued the warrant without reading it, *United States v.*

23

*Decker*, 956 F.2d 773, 777 (8th Cir.1992).  *See Martin*, 297 F.3d at 1316-17.  Above all else, the issuing judge must not act as a mere "rubber stamp" by solely relying upon the fact that police officers are asking for the warrant.

Under *Leon*'s third exception, the affidavit must not be a "bare-bones" statement containing nothing more than conclusory allegations.  *See Leon*, 468 U.S. at 915; *Glinton*, 154 F.3d at 1257.

## IV.   Discussion

### A.      *Franks*

The Court concludes that Wambeke is not entitled to a *Franks* hearing.  First, the affiant did not mislead the issuing judge into finding that Crew's Skype avatar was child pornography.  The affidavit provided that Hickey believed the Skype photograph was child pornography, and Westall stated that the images he reviewed, including the avatar photograph, was child pornography.  [Doc. 47-2 at 5].  However, Westall also described the image as two young males lying naked face down in a forest setting.  That description, without more, establishes that the image was not child pornography under federal law, and thus the issuing judge was not misled.  In fact, it was the Court's concern that the image based on that description would not constitute child pornography. *Cf. United States v. Dean*, 135 F. Supp. 207, 211 (D. Me. 2001) (holding

24

that photographs of nude minors which did not contain lascivious exhibition of the genitals did not fit within statutory definition of child pornography, despite parties stipulation that they were child pornography). If the affiant had made this representation and then not described what was depicted in the photograph, the Court's conclusion would be different. The description in this case prevents the Court from finding a misrepresentation here.

Second, the affiant did not mislead the issuing judge as to the Jacksonville website, because there was no discussion of any child pornography being found on Wambeke's computer at that time.

Third, the Court fails to see the misstatement as to the secured Internet connection, since the critical point of paragraph 13 of the affidavit is that while the agents were conducting surveillance of the Wambeke residence, "Crew"— who the affidavit shows was Wambeke—was "actively engaged in online communications." [Doc. 47-2 at 7]. This does not mean that Crew/Wambeke was downloading child pornography at that time. Rather, it means that Crew's Skype account was online, i.e., active, at the time the agents observed the Scion parked at the Wambeke residence, thus making it more likely that Wambeke was home at that time. That fact also made it more likely that Wambeke used Skype while he was in the

residence, which is important because Skype was one of the methods "Crew"/Wambeke used (in fact as recently as one week before the warrant application) to distribute child pornography to others (as detailed by Trent's information related in the affidavit).  [*Id.* at 6-7].

Thus, the Court concludes that Wambeke is not entitled to a *Franks* hearing.[5]

## B.    Probable Cause

The Court recognizes that in close cases, the presumption that a warrant is valid usually carries the day, and this is a very close case.  However, the Court concludes that the warrant was not supported by probable cause.  First, however, the Court rejects Wambeke's arguments that the warrant application did not establish a connection or nexus between his activities and the residence.  The affidavit detailed that Wambeke

---

[5]    The Court does not find that Wambeke's allegations about "associated with" or "resolving to," [Doc. 47 at 19], warrants much discussion. First, his argument that these terms frequently mean that the affiant does not have evidence to back up the proposition claimed is conclusory, which is insufficient to make a substantial preliminary showing of a *Franks* violation.  *Franks*, 438 U.S. at 171 (holding that the allegations in *Franks* motion  "must be more than conclusory and must be supported by more than a mere desire to cross-examine"); *see also United States v. Gray*, 544 Fed. Appx. 870, 882 (11th Cir. Nov. 15, 2013) (holding that conclusory allegations failed to show affiant had requisite intent to mislead issuing judge in omitting facts). Second, as stated in the text, the critical aspect of the information regarding the Internet connection at the Wambeke residence is that at the time the agents surveilled the residence and Wambeke's vehicle was in the driveway, Wambeke's Skype connection was online.

delivered and exchanged "child pornography" with others, and Hickey, CS, Trent and Watts stated that Wambeke was "Crew," and that they received child pornography from him either in person (when he drove to their residences) or over the internet or via Skype.  It also established that Wambeke lived at the residence and operated the Scion, and used a vehicle (reasonably inferred to be the Scion) to transport child pornography to the informants.  Further, the fact that during law-enforcement surveillance of the residence, at the time the Scion (and thus inferentially, Wambeke) was at the residence, "Crew" was online via Skype, establishes a reasonable probability that Wambeke used his Skype account while at the residence, and since he used Skype to transmit alleged child pornography to other individuals, the issuing judge had a substantial basis for concluding that the residence likely contained evidence of such transmissions.  Finally, the issuing judge was authorized to rely upon the opinions and conclusions of an experienced agent regarding a set of facts.  *Robinson*, 62 F.3d at 1331 n.9.  Here, Westall was an experienced agent in child-pornography and child-exploitation investigations, and he opined that in his experience, purveyors of child pornography typically store child pornography in their residences.  The issuing judge was entitled to rely on that opinion based on the other facts that Wambeke had distributed child pornography in person and through Skype, and that the fact that his automobile was

27

present at the residence at the same time he was communicating through Skype made it more likely than not true that Wambeke stored child pornography at his residence.

However, what was lacking from the affidavit is any indication that what Wambeke was distributing was, in fact, child pornography. Title 18 U.S.C. § 2252(a)(4)(B) requires, for an image to constitute child pornography, that the "visual depiction involve[ ] the use of minors engaging in sexually explicit conduct." The definition of "sexually explicit conduct" is limited to "actual or simulated: (i) sexual intercourse . . .; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of the person." 18 U.S.C. § 2256(a)(2)(A). "Virtually all lower courts that have addressed the meaning of 'lascivious exhibition' have embraced the widely followed *Dost* test, originally developed by a California district court and affirmed in an opinion by the Ninth Circuit." *United States v. Johnson*, No. 2:10-CR-71-FtM–36DNF, 2011 WL 2446567, at *5 (M.D. Fla. June 15, 2011) (quoting *United States v. Williams*, 444 F.3d 1286, 1299 n.62 (11th Cir. 2006) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd*, *United States v. Wiegant*, 812 F.2d 1239 (9th Cir. 1987). These factors are: "1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, i.e.

28

in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Johnson*, 2011 WL 2446567 at *5-6 (citing *United States v. Steen*, 634 F.3d 822, 826 (5th Cir. 2011) (citing *Dost*, 636 F. Supp. at 832)).

The affidavit's failure to describe the images these witnesses claimed to have obtained from Wambeke, or that the affiant observed on the computer devices or in the homes of the cooperating individuals, so as to allow the issuing judge to determine whether the images in fact constituted child pornography as prohibited by the above-referenced statutes, is fatal to the warrant.[6] By not describing the images, and instead providing "a wholly conclusory statement" that the images were child pornography, the

---

[6]     The Court rejects Wambeke's argument that the lack of a description of what constitutes child pornography rendered the warrant an impermissible general warrant. First, Wambeke raised this argument for the first time in his reply brief. *See U.S. Commodity Futures Trading Comm'n v. Atha*, 420 F. Supp. 2d 1373, 1381 (N.D. Ga. 2006) ("[T]he court need not consider an argument raised for the first time in a reply brief."). Second, the warrant itself directed law enforcement to seize material depicting minors engaging in sexually explicit conduct, [Doc. 47-1 at 4], and thus adequately limited the executing agents' discretion.

29

affidavit failed to "provide the magistrate judge with a substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 239.  As the Supreme Court has stated, conclusory statements in a search-warrant affidavit, without sufficient factual support, will not support a probable-cause finding.  *Id.* ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.  In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued. ").

The failure of the affidavit to describe the images with any detail is all the more critical in light of the fact that the one instance where the affidavit did describe an image—Wambeke's Skype profile page—did not constitute child pornography.  Not all nude pictures of minors are child pornography, but only those containing a "lascivious exhibition of the genitals or pubic area."  *United States v. Peeks*, Criminal No. 1:08CR122, 2009 WL 1690527, at *1 (N.D. Miss. June 16, 2009); *see also* 18 U.S.C. §§ 2256(2)(B)(iii), 2256(8)(B); *Dean*, 135 F. Supp. at 211.

The Eleventh Circuit has not confronted this exact issue.  It is true that some courts have found the generic term "child pornography" to be sufficient.  *See United States v. Simpson*, 152 F.3d 1241, 1247 (10th Cir. 1998) (holding that "the words 'child

pornography' need no expert training or experience to clarify their meaning") (citation and some internal quotation marks omitted)[7]; *United States v. Smith*, 795 F.2d 841, 848 (9th Cir. 1986) ("As to the affidavit's 'conclusory' statement that the photographs depicted 'sexually explicit conduct,' we do not find the character of the allegation fatal to the warrant."); *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (holding an affidavit was sufficient to establish probable cause for issuing a search warrant where the application did not describe the images seen by a computer repairman, but the repairman described the images as disturbing, unlike any he had seen before, and appeared to be "child pornography"). *Cf. United States v. Kimbrough*, 69 F.3d 723, 727-28 (5th Cir. 1995) (concluding that generalized description is sufficient, but did so in the context of whether the search warrants were sufficiently particularized with

---

[7]     The Court also notes that in *Simpson*, 152 F.3d at 1247, while holding that a generic description of "child pornography" is sufficient, the affidavit in that case recounted the titles of videos, including "# sexpicshare # % kidsexpics." Several cases note that an adequate description of the illicit nature of the materials can be gleaned from their titles. *United States v. Jameson*, 371 Fed. Appx. 963, 966 (10th Cir. Apr. 8, 2010) (affidavit not conclusory where it noted video titles were consistent with child pornography); *United States v. Beatty*, No. 1:08-cr-51-SJM, 2009 WL 5220643, at *13 (W.D. Pa. Dec. 31, 2009) (holding that issuing judge could consider that affiant had conducted a peer-to-peer search using terms associated with child pornography and had located on defendant's computer numerous files whose titles contained highly graphic references to specific sexual acts involving prepubescent minors, including terms such as "child_sex," "incest," "illegal pedo sex," "pedofilia," and "Lolita").

31

respect to the materials to be seized, not in the context of the probable-cause determination); *see also United States v. Layne*, 43 F.3d 127, 133 (5th Cir. 1995) (observing that the term "child pornography" sufficiently guided police officers executing warrant to know what items could be seized; the words "need no expert training or experience to clarify their meaning").

Other courts have held that "[t]he label 'child pornography,' without more, does not present any facts from which the magistrate [judge] could discern a 'fair probability' that what is depicted in the images meets the statutory definition of child pornography and complies with constitutional limits." *United States v. Pavulak*, 700 F.3d 651, 661 (3d Cir. 2012); *United States v. Doyle*, 650 F.3d 460, 474 (4th Cir. 2011) (holding that there was no probable cause where the affidavit did not provide "anything more than a description of the photographs as depicting "nude children"); *United States v. Battershell*, 457 F.3d 1048, 1051 (9th Cir. 2006) (noting that a conclusory statement is insufficient when it is necessarily based on a subjective determination); *United States v. Brunette*, 256 F.3d 14, 17-19 (1st Cir. 2001) (holding that subjective assertion in warrant affidavit that the images depicted "a prepubescent boy lasciviously displaying his genitals" insufficient to establish probable cause); *United States v. Groezinger*, 625 F. Supp. 2d 145, 149-50 (S.D.N.Y. 2009) (affidavit

32

describing images as "child pornography" did not amount to probable cause, but suppression was not warranted under *Leon*). *Cf. United States v. Burnette*, 256 F.3d 14, 19 (1st Cir. 2001) (rejecting defense claim that issuing judge had to view images of purported child pornography before issuing warrant, as long as affiant includes reasonably specific descriptions of the images in the supporting affidavit).

The Court concludes that these latter cases's holdings are more consistent with the constitutionally-mandated role of issuing judges to independently assess whether a given warrant application is supported by probable cause. *See New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 n.5 (1986) (holding that a reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate judge to determine whether there is probable cause to believe that the film is obscene and whether a warrant authorizing its seizure should issue).[8]  Otherwise, the issuing

---

[8]     Other cases contain some basic description of the images and thus are not instructive in the present case where no description (other than of the Skype home page) was set out. *See United States v. Chrobak*, 289 F.3d 1043, 1044 (8th Cir. 2002) (probable cause found where the affiant averred that the images depicted sexually explicit conduct involving children under the age of sixteen or graphics depicted minors in sexually explicit conduct); *see also United States v. Genin*, 524 Fed. Appx. 737, 738 (2d Cir. May 7, 2013) (probable cause found where affidavit stated that FBI analyst had reviewed videos and concluded that " '[n]early all' . . . depicted minors engaged 'in sexual acts, or . . . with their legs spread, or the camera lens zoomed in close on their pubic region [sic], thereby exposing the minor's genitals' "); *United States v. Shelton*, 418 Fed. Appx. 514, 518 (7th Cir. Apr. 14, 2011) (probable cause existed where

AO 72A
(Rev.8/8
2)

judge is improperly substituting the law-enforcement agent's "assessment of the facts for the judge's own independent analysis of the situation." *Martin*, 297 F.3d at 1317.

The Court rejects the government's arguments that the totality of the circumstances renders the present affidavit sufficient. The Court concludes that the affiant's inclusion of portions of the statutory definition of child pornography in the affidavit cannot be extrapolated to provide an adequate description of the images. Again, this extrapolation abdicates the role of the issuing judge to conclude that the facts in a particular case give rise to probable cause. Second, although the affiant's experience in child-pornography investigations is important, here the Court must discount the affiant's experience since the one image he did describe was not, in fact, child pornography.

Thus, even though the issuing judge's decision is entitled to deference, the Court concludes that the search warrant for Wambeke's residence and vehicle was not supported by probable cause.

---

affidavit described 12-year-old girl "undressing to a state of complete nudity in a bedroom").

34

### C.    Leon *good faith*

Be that as it may, the Court finds that suppression is not mandated in this case. As the Eleventh Circuit has held, "*Leon* 'stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause.' " *Robinson*, 336 F.3d at 1296-97 (citation and footnote omitted). "Under this good faith exception to the exclusionary rule, suppression is necessary 'only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.' " *Id.* at 1297 (quotation and citation omitted in *Robinson*).  The government bears the burden of demonstrating the applicability of the *Leon* good-faith exception, *id.*; *see also United States v. Travers*, 233 F.3d 1327, 1331 n. 2 (11th Cir. 2000); and the burden may be be met by reference to facts stated within the affidavit.  *Robinson*, 336 F.3d at 1297.

The Court already has rejected Wambeke's argument that Westall misled the issuing judge in his affidavit.  *See supra* at 24-26.  As a result, *Leon*'s first exception–where the issuing judge is misled by the affiant– does not apply.

The Court also concludes that the second *Leon* exception does not apply. Although the Court has concluded that probable cause is lacking, the probable-cause

issue is close, and the issuing judge did not abandon his judicial role in issuing the warrant.  For example, there is no evidence that the issuing judge executed the warrant along with law enforcement.  There were a number of facts in the affidavit that the issuing judge could rely upon to have concluded, even if erroneously, that the affidavit was supported by probable cause.  The Court addresses these facts in the next paragraphs below.

The affidavit supporting the search warrant was not so lacking in indicia of probable cause so as to render official belief in its existence entirely unreasonable. First, the agents could rely on the fact that each of the informants conceded that they received child pornography from Wambeke, thus making statements against their penal interests.  *United States v. Robinson*, 202 Fed. Appx. 434, 436 (11th Cir. Oct. 27, 2006) (citing *Farese*, 612 F.2d at 1378).  Second, other than Trent and Watts (who apparently lived together), there is no indication of any connection between the several informants other than their relationship with Wambeke.  That they each consistently reported Wambeke as a source of child pornography and were consistent in describing his method of distribution (in person or via Skype, and Wambeke came to their residences with a laptop and external drive containing what they believed was child pornography), renders law enforcement's belief that the warrant was valid more than reasonable.

36

Third, one of the informants, Hickey, was indicted by a federal grand jury for possession and distribution of child pornography. While the search-warrant affidavit does not state that Hickey was indicted for materials obtained from Wambeke, the fact that the affidavit disclosed that a grand jury had found probable cause to believe that one of the informants was charged with child pornography in a related or same investigation rendered the law-enforcement agents's belief in the existence of probable cause supporting the warrant reasonable. Thus, the search-warrant affidavit in this case is not a bare-boned affidavit that would not permit law-enforcement agents to reasonably rely upon its validity.

The facts of this case are distinguishable from the lack-of-good-faith cases cited by Wambeke. First, in *Doyle*, the court found *Leon* inapplicable because the information in the warrant was so stale that the police could not have reasonably relied upon the warrant's probable-cause conclusion. *Doyle*, 650 F.3d at 474-75. Here, on the other hand, the information was timely, particularly considering the string of consistent and corroborated distribution activities by Wambeke detailed in the search-warrant affidavit. *See United States v. Bascaro*, 742 F.2d 1335, 1345-46 (11th Cir. 1984) ("[W]here an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time.

37

On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance.") (citations omitted).

Second, *United States v. Hodson*, 543 F.3d 286, 293-94 (6th Cir. 2008), does not compel a contrary result. In *Hodson*, the search warrant was found to be improperly issued because the only evidence supporting the defendant's possession of child pornography was his admission that he engaged in child molestation and evidence that he used a computer. As discussed above, there was ample evidence in the instant affidavit, even if the Court concludes it did not satisfy the probable-cause standard, upon which law enforcement could reasonably rely to believe that probable cause existed. Thus, *Hodson* is readily distinguishable from this case.

## IV.    Conclusion

In conclusion, although the Court concludes that the search warrant for Wambeke's residence and vehicle was issued without probable cause, the *Leon* good-faith exception to the exclusionary rule applies. Thus, the Court **RECOMMENDS** that Wambeke's motion to suppress, [Doc. 47], be **DENIED**.

The Court has now ruled on all matters referred to it pursuant to Standing Order 14-02. In addition, the Court has not been advised of any impediments to the scheduling of a trial. As a result, this case is **CERTIFIED READY FOR TRIAL**.

AO 72A
(Rev.8/8
2)

**IT IS SO RECOMMENDED and CERTIFIED**, this the 2d day of June, 2015.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)